The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Good morning, everybody. We're pleased to be holding court this morning at the University of South Carolina School of Law. Glad to see a large group of students and others here to witness their arguments before the court. I understand that a portion of the ticket proceeds today will go to the senior judge, Bill Traxler, Retirement Fund Entrepreneur. Grateful. We have three cases on the docket. The first is Ard v. O'Malley and Mr. Ballinger. Thank you, Your Honor. May it please the Court. My name is Scott Ballinger. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce Ms. Audrey Payne and Mr. David Ahnen, who will be presenting argument for Donna Ard today. Ms. Payne will handle the opening, and Mr. Ahnen will handle any rebuttal. Thank you. Thank you, Mr. Ballinger. Ms. Payne, you may be ready. Thank you, Your Honors, and may it please the Court. Audrey Payne for Ms. Donna Ard. The medical vocational guidelines, or the GRIDs, are a helpful tool to help ALJs decide whether disability claimants can transition to other work. They aren't designed to dictate outcomes in every case. The borderline age regulation is an example of that flexibility. In every disability case, ALJs must answer two threshold questions to decide whether using a claimant's chronological age or an older age category is more appropriate given their limitations. They have to ask whether a claimant is within a few days to a few months of the next age category, and whether applying the older age category would make a difference in finding them disabled. But we have no evidence or suggestions that the ALJ was looking or thinking about these questions in Ms. Ard's case. She was... Why do you say they must ask? It's a requirement that... So 404-1563-B is a requirement in the regulation saying how we use age at Step 5. When they're looking at the age categories, they have to look at every single question in every case. They have to use it to decide whether chronological age or the older age category is more appropriate. That's an escape mechanism that was built into the regulations to preserve the individualized determination requirement that's required by the Social Security Act. Part of having these tables, admittedly somewhat mechanical tables and grids, is to lend some consistency to rulings so that we don't have ALJs making what could be perceived as wildly inconsistent rulings without any anchor by which they could define exactly where the line should be drawn. So what's wrong with that admittedly somewhat mechanical process? Line drawing in the grids itself was upheld as rational by the Supreme Court in Heckler v. Campbell. But part of that upholding against an arbitrary and capricious challenge was these flexible escape devices that were built into the regulations to preserve individualized determinations. You used the word escape. That to me connotes some ability of a and I'm not casting aspersions on ALJ who might be inclined to sort of not apply the regulations as they were intended to and thereby reach a result which might not be consistent with the intent of the regulation. So what do you mean by escape? I mean that if a claimant's individual limitations don't exactly match the grids, regulations like the borderline age regulation invite these ALJs to address that problem. And when a claimant fits those threshold categories, the discretionary analysis on whether or not to ultimately move a claimant up is assigned to those ALJs. But as 1563B is written and as it stands, once those threshold requirements are met, the ALJ must consider whether to move a claimant to the next age category. Counsel, if the in this case following the reference to the age of BARD is a discussion of the vocational expert that the agency retained and considered, when that occurs and a vocational expert has looked at the individual and given an individual assessment, does that indicate that we're kind of outside any mechanical application of the grid? In other words, does that reliance on the vocational experts' assessment of the individual medical conditions and the job opportunities make any consideration of the grid or lack of the borderline thing harmless? No, Your Honor. Much of what the vocational experts are brought in to do is specifically designed to address things like non-exertional limitations, which brings people... What limitations? I'm sorry. Non-exertional, which would be things like non-strength-based, which are specifically what are described in the grids themselves. The vocational experts are there to help decide if someone is of sedentary work, for example, like Ms. Bard is in terms of her residual functional capacity. She has additional limitations on top of that because of her non-strength-based limitations. And so the vocational expert helps to address that question. But... Exertional and non-exertion? Yes, Your Honor. With respect to the age consideration, though, this is a requirement in every case when deciding which age category to apply if an ALJ is going to rely on the grids. And here, the ALJ devoted one sentence to analyzing the age factor. They merely noted her birthday, her number of years of age, and her chronological age category. Well, I think that's because the ALJ probably concluded based on the presumption of line drawing, which at some point, we've got to draw a line somewhere, right? So the ALJ, as best I can tell, drew the line at the notion that when you have a claimant who is less more than six months away from her 50th birthday, that that presumption should apply and she doesn't get the benefit of the higher grade category. Why is that an abuse? And why is that arbitrary and capricious in this case? Because there's nothing in the record to show what the ALJ actually based the decision on. We can read into the ALJ's decision to say that they adopted that premise, but they could have mechanically applied the grids and said, she's simply 49, and therefore, we're going to look at that. And we have no indication that they were even thinking about these factors. If the ALJ had done that, been as explicit as you suggest, as you would have preferred, would we affirm? We think a few days to a few months fairly includes claimants like Ms. Fard, who was only six months and 17 days. Where would you draw the line? We think a year is a fair analysis, and the only constraint that you can fairly read to be clearly outside a few days to a few months. The agency has never adopted... Why is that, counsel? I mean, a few days to a few months. That's fair. Assume that the agency and the ALJ thought it was six months. Why is a year more persuasive than six months in determining what a few days and a few months mean? A few reasons, Your Honor. First, there's nothing in the language, a few days to a few months, that supports a distinction between six or seven months, three or four months, or five and six months. Or a year and 16 months. People ordinarily don't describe periods of years to include a few months. People don't normally speak in that language. But, for example, if we were talking about Phillips versus Astru and Baez versus Astru, we would say that those came out a few months apart, despite coming out six months apart. So, it's fairly read into the to a few months and the fact that they expressly state in this litigation that ALJs can find borderline age situations to be found outside the six-month window. There's nothing about Ms. Bard's situation being 17 days beyond six months that precludes her from satisfying Prom 1. On pages 12 and 13 of their brief, the agency specifically states an ALJ is not precluded from finding a claimant to be met outside a six-month window in those circumstances. If that's how we read a few days to a few months, then nothing about Ms. Bard precludes her from satisfying Prom 1. And that's why her ALJ failing to address the transferability issue is a problem. Ms. Payne, let me ask this. So, if we were to agree with you and you would want us to vacate and remand and send the case back to ALJ for further consideration of benefits, how would the opinion write, not just to address your client's specific situation, but to guide ALJs going forward as to when, you know, what line should be drawn in a rule that would apply not just to your client, but to the future cases? We would encourage this court to describe in their decision that if a claimant fairly fits within a few days to a few months, ALJs have to explain their reasoning and their basis for decision on both factors, both a few days to a few months and whether the older age category would fit. How is an ALJ to know whether a claimant fits within, you know, a few days to a few months? We would invite this court to be looking at a year, for example, but if this court thinks it is a somewhat more discretionary analysis, the ALJ has to include enough in their decision to show that that was the basis on which they made their finding, that they found that the claimant was not within a few days to a few months. Even when agencies have discretion, SEC versus Chenery Corp is very clear, they have to be clear that they are exercising the discretion to which they have been allocated. So, we think that they should be at least describing a claimant's eligibility outside of a year, but even otherwise, they need to include enough in their decision to I'm sorry if I'm interrupting you, but if we adopted your view of one year, the next time we come down here to hear arguments, there'll be somebody arguing, my client's a year and a day, just one day, so let's move the line. So, you would agree, the line's got to be somewhere. Yes, but it has to be fairly derived from the language. Does it have to be a firm and inflexible line? I see I'm out of time. May I finish? I think a little bit. Okay. We think that to the extent that a hard line can be drawn, it does have to be at least derived from the regulations. So, whatever line we draw is going to be, you would agree, it will have to be inflexible. Yes, Your Honor. Thank you. I have one more follow-up. Counsel, I understand your argument that the ALJ didn't sufficiently explain the decision. Putting that aside, is the standard by which we review this outside outer limit, six months, a year, whatever, is that based on the Christensen standard that seems really a Skidmore type standard, which is the most persuasive? Is that the standard by which we make that determination? Is that making sense? Can you rephrase the question? Yes. So, if we assume the ALJ drew a six-month line, I appreciate your argument that it should be a year. But do we, is our standard of review to that decision, is it arbitrary, capricious? Do we rely on the agency to the extent it's our standard of review on that outer limits? If you're interpreting the regulations, we would argue that that's a legal question. That would be a de novo kind of review. And if you're relying on the agency's own analysis in the HALACS, for example, where they suggest six months might be reasonable, no circuit has accorded deference to it except with the power to persuade. So, what deference do you suggest we afford the decision? Is it HALACS? Am I pronouncing that correctly? Yes. What level of deference do we give when reviewing the rule, so to speak, in HALACS? With respect to the regulations, we'd urge... It's not a regulation. For the HALACS, we think no more than Skidmore would be appropriate. I couldn't hear you. No more than Skidmore deference. But that means if we think that's more persuasive than one year, that would be an appropriate basis to affirm. Yet the ALJs or the agency in this litigation admits that beyond six months can fit into these regulations. So, we'd invite the court to adopt that analysis. Thank you. Thank you, Ms. Payne. Mr. Summers? Thank you, Your Honors. May it please the court. My name is David Summers, and I'm a Special Assistant United States Attorney appearing on behalf of the Commissioner of Social Security. This case is about a reasonable approach to taking age into account in a disability claim. If you're 49 and not even halfway to your 50th birthday on the decisive date for your claim, the agency does not need to specifically explain why the rules for 50-year-olds  did not apply to you. You were found to be 49, not a few days to a few months to 50. Ms. Ard demands a different approach, one that would extend the notion of borderlines so far that no one ever really is 49 years old for purposes of their disability claim. Instead, even the day after your 49th birthday, you're a few days to a few months from turning 50, according to Ms. Ard. And that triggers a need for explanation about why you were treated like a 49-year-old. As I understand the regulations, this is defined as a presumption, not an iron-clad rule, right? Do I have that right? Yes, absolutely. Yes. If that's right, then why isn't the ALJ required to explain why, in this case, in Ms. Ard's case, that presumption should or should not apply? The ALJ said nothing, right? Well, the ALJ does say what the decisive date in Ms. Ard's claim is. The ALJ says the decisive date in Ms. Ard's claim is December 31, 2015. That's her date last insured. That's the last day that she has to qualify based on her prior earnings to qualify for the disability program that she applied for. So the ALJ says that. And then when the ALJ gets to finding number 7, which is page 21 of the Joint Appendix, she notes that Ms. Ard was born on July 18, 1996. And so she therefore was more than six months from her 50th birthday. And so if we read that in the context of the regulatory language, which is a few days to a few months, and then also in the context of publicly available policy manuals, HALACs, specifically, we're dealing with a definition of what that means. And so HALACs instructs that a few means a small number, and a few days to a few months generally means a period not to exceed six months. Well, isn't that the problem, though? If it's a general rule, not an ironclad line, wouldn't the ALJ in every case have to explain why that general rule should apply? And they say nothing other than this is the last insured date, this is the claimant's birthday, and I'm moving on. But there seems to be a gap there in the reasoning. Well, there is no gap in the reasoning because we can see that the ALJ was applying the general rule. So the idea is that the dynamic flips at six months. I mean, taking Ms. Ard as an illustration, there were fewer days and months looking back to her 49th birthday than she had looking forward to her 50th. We can see if we read the regulation and we read HALACs and we read the application of it here. But the ALJ is signing that regulation, the ALJ is making these findings. But counsel, wouldn't that, that would make a lot of sense if the HALACs didn't have the word generally there. Then if it was an objective criteria, you either were in or out, then I can no need to explain. If it's a presumption with generally, it suggests you could be outside of six months by the agency's documents and still be in the borderline situation. How do we know that the ALJ considered that as opposed to just going strictly by age? So we know the ALJ considered it because we have to, we should read the ALJ's decision in the context of the regulations, HALACs and the record before her. And she is dealing with the claimant who's outside that six months range. And under the agency's policy guidance, that is a not-to-be-seen line. So that's the general line. That's the outer guideposts, right? So if the ALJ is going to go beyond that, then the dynamic flips and she would have to explain why she did that, but not why she didn't. So the point is that the ALJ is falling into, Ms. Ard falls outside of that six-month window. So you're essentially saying if it's, if the ALJ's decision is consistent with the HALACs requirement, yeah, HALACs instructions, there's no need to provide any explanation? No, yes, sorry, yes. That is sort of the idea. The idea is that we're reading this ALJ's decision in the context of a specific record and in context of a specific regulation with policy guidance undergirding it, you know. And so if we can read that and we can understand that the ALJ was comporting with the regulations, that should end the analysis. We have what we need to trace the path of the ALJ's reason. So is it the administration's position that the ALJ can lawfully consider a person who's more than six months out a borderline situation? That is not no, answer my question. The question is, is it the position of the administration that an ALJ can lawfully apply borderline criteria to a person who's more than six months out? Yes, yes. So that makes me wonder then, what is our standard of review? I mean, is, what do you think our standard of review is in that situation? In terms of if we can go past that? I mean. You're telling me they can't. Yes. I mean, let's assume you're right. So what's our standard of review? Is it abusive discretion? Is it a discretionary call? Or is it a question of law? What is our standard of review? So I would say that there should be some respect given to ALEKS and the generally, and the provision in ALEKS that does allow. Because I mean, there is. That's not, given respect to ALEKS, that's not a standard of review for us. It would be the persuasive, it would be the same. We're going to apply to determine if you're right. It would be the same. It would be the persuasive standard. We would think that the ALEKS. That's not a standard of review. I mean, I understand it's a interpretive ruling. And I understand that a particular amount of deference has to be given by us. And by the way, what is that? What is the standard of deference that we would owe to the ALEKS position? I would say that ALEKS deserves some deference in the context of, you know, doing the analysis about whether or not. Some deference doesn't help. Well, no, like Kaiser versus Wilkie as compared to Skidmore. So you would be making a decision. Skidmore deference is our deference. Well, I mean, I think this case doesn't necessarily present that on all fours. But I would, you know, because we're not, there's no challenge here to necessarily the ALEKS. I mean, the challenge is whether or not this ALJ decision is supported by substantial evidence. And we can understand what the ALJ did. And so how is there, how is this an evidentiary question? I understand that generally speaking, the test is we would determine whether or not the decision is supported by substantial evidence. But this, I just don't see this as an evidentiary issue. There is no challenge. Council isn't, I mean, Ms. Ard's argument isn't that the ALEKS should be the argument here is about what, like how this ALJ applied it is what we're focused on. So the point is, it sounds like you're not advocating in favor of a six-month, you know, hard and fast rule. And so the question then is if it's permissible, according to the administration, to consider someone who's outside six months, it sounds like the question is if an ALJ like the one here, you know, declares the age without showing his or her work at all, we should presume that they acted in compliance with the law, as opposed to requiring the ALJ to show us, you know, through an explanation that he or she complied with the law. Is that correct? Yeah, yes, exactly. The ALJ is, in this case, is following the agency's regulations as interpreted through ALEKS. So that, the way ALEKS is written is once you get to that first step and you find somebody who's outside of that small number window, a few days to a few months, not to exceed six months, then you apply the claimant's chronological age. And so Ms. Saar is 49 years old. Does the fact that this issue was not raised before the ALJ a factor for us to consider? I do think so. So not, certainly not in the context of forfeiture or waiver or anything like that. But I think it is important to note that Ms. Saar didn't allege she was borderline, she was represented by counsel, first of all, before the agency. There was a counsel, he submitted a brief. He identified her age as 49 years old, five months. So the ALJ had no reason to believe this was a contested fact when she's writing her decision. So she writes the decision, follows the regulations, follows ALEKS, and then applies Ms. Saar's chronological age, finds that she's 49 years old. So are you saying that the, what if the ALJ had found something in the record that supported bumping Ms. Saar up to the next age? Well, first of all, is there anything in the record that supports that? I mean, nothing has been particularly identified. I think the, a reply brief in this case, you know, focuses a lot on the non-exertional limitations that were identified. And those, to be clear, as Your Honor had pointed out, were considered here. You know, this wasn't a situation where the grids answered the question. It didn't end the analysis in terms of whether Ms. Saar was a vocational expert. The vocational expert identified nearly half a million jobs that a person in Ms. Saar's situation could perform. And so that's the reason why she was out. But isn't the issue looking at the grids, I understand there's a separate issue maybe with a vocational expert, but isn't the issue that whether she would be bumped up or not depends on whether her skills were transferable. And if you look at the grids, if they're in the upper age, I think that's advanced age, so those age categories, I must say, are offensive to someone who's 59. But putting that aside, it looks to me like that's the key fact. I mean, if looking at the grids, if her skills were transferable or not, if they were not and she's bumped up, she would be disabled. If they were transferable and she's bumped up, she would not be disabled. So am I reading that wrong? So the way that the borderline age analysis would work, assuming, say, someone has somebody who's five days after the date, you're going to look at the vocational factors, but there is guidance that we don't want double weighing. So it can't be circular where if you would be disabled necessarily that you would, if that vocational adversity is already considered in the higher age category, that can't be the reason you get bumped up. Can I go back to Judge Trackler's question about who has the burden here? So you said that Ms. R never raised this issue of borderline age, never presented that issue fairly to the ALJ, but if there was something in the record that supported bumping her up to that next level, does the ALJ have an independent obligation to consider that evidence and make that call? I mean, the ALJ obligation, to a certain extent. So the way that the burdens of proof work is that at step five, there is a burden of production that goes back on the ALJ to present vocational evidence that supports finding, you know, based on this person's vocational profile, whether or not they can return to work. And that, you know, the idea being that, you know, the claimant shouldn't the position of having to, you know, rebut, you know, call their own vocational expert necessarily, right? So the, so what the ALJ should, you know, because it is an inquisitorial process, so the ALJ should be focused on that, should be thinking about it. But I don't think the ALJ necessarily needs to step into the shoes of claimant's counsel and present, you know, like affirmative evidence or take that affirmative issue if it does appear as uncontested work. All right, let me ask you a question. As I understand your argument, the six months is not a hard and fast rule that the ALJ can consider someone borderline more than six months out. So where is the line, according to the administration? So the- Is there a line? Is there a hard and fast line or is there no line? The line, the line does, the line does present a sliding scale. I mean, the part of the problem here is we're trying to not- Where is the line? Is there a line? The line, the line that, the average guidepost that we have is six months. That's the line that- Is that a hard and fast line? It's not hard and fast. Where is the hard and fast line? Where the ALJ knows this is so far out, I don't need to consider it. Is there such a line in the view of the administration? The, none has ever been set as that. Well, if there's no line, then why doesn't the ALJ have to explain every one of them? Because he could, according to your view, he could treat anybody as borderline if he felt it was appropriate. The, the problem, the problem with trying to set such a hard line is that a few days to a few months necessarily, like- I know it's hard. It wouldn't be here if it wasn't hard. It's trying to avoid, it's there because it's trying to avoid a mechanical application. And so then if you then have then another mechanical application on the other end, then that creates- I mean, isn't that exactly what the ALJ did here? It was sort of a mechanical application of the, of what you say is not a line, a guidepost because she, it's a she, I guess, right? Yes. Didn't explain, didn't explain why this arc fell on either side of the line, other than this is the last and sure date. This is her birth date, end of story. And by definition, that doesn't account for the possibility that she might've been entitled to have been bumped up. I, it does, it does if we read that in the context of the regulatory language with the, the Hal X, you know, we know that she considered her age. She made a fact find, she's 49 years old. But we don't know, I mean, if looking just at the, the paper, just at the document, we, we can tell she knows her age and we can tell she says she's in the younger category. That could mean she mechanically applied it and since it was outside of the actual chronological age, she stuck with that. Or that could mean she considered the borderline situation and said the facts don't support that. We can't tell, I don't think, from the document itself. So the question is, does an ALJ, if it's potentially applicable, have to show her work or do we presume she acted in accordance with the law? Isn't that a question? Yes, I think, I think, and I think the answer to that question is that. What's the, I mean, why, and your position is if it's not inconsistent with the law, we presume she followed the law. Is that right? Yes, because it is consistent with what, if she was following HalEx, this is what she, this is what she would do. I see I'm out of time. I'm sorry. One last question. I'm sorry. There's a, there's a section that follows the age description by the ALJ that talks about the vocational expert and the findings of that expert about an individual assessment and job opportunities that exist, given the residual function of the claimant. What's your view as to the relationship of that evidence to this whole question of borderline age? Does, if you have an individualized assessment like that, does that make any failure to properly explain your decision harmless because that's an There's certainly not apples and oranges. There's overlap. They're the same factors. So, the same factors apply. It is somewhat of a different analysis. It would be a different path that the ALJ would take in making the two decisions. I don't, you know, I can't say that it necessarily in every case would be harmless, but there is, you know, certainly overlap there. Thank you, Mr. Summers. Ron? Thank you, Your Honors, and may it please the Court. We think Judge Traxell's question with opposing counsel gets to the heart of this issue. Both in its brief and in oral argument today, the agency advances two incompatible positions, both of which are at odds with the better reading of the relevant legal authorities. On the one hand, the agency argues that the regulatory phrase within a few days to a few months establishes a hard-edged cutoff at six months, but that position is wrong for several reasons. As Your Honors noted, the HALAC says the few days to a defined as a six-month period, meaning that although— I don't mean to interrupt you or direct your argument, but I thought they said the exact opposite. I thought they just told us that six months is not a hard-and-fast rule. I take your point. I think our response to that is if there is no hard-and-fast rule and ALJs are vested with an element of discretion in their decision making, then they have to explain in the agency record the basis for that particular exercise. In the absence of assertion by the claimant that he or she should fall in the higher bracket? Not at all, and I think that's because, as opposing counsel noted, at step five of the disability determination process, it's a black letter Social Security Disability Insurance Benefits Law, that the government carries the burden to prove that ARD is not disabled within the meaning of the grids, meaning that the government has to prove that ARD could make transition to other work that exists in the national economy. But as the Tenth Circuit noted in Daniels v. Apfel, when the agency fails to do their homework with respect to the borderline age issue, they can't be said to have carried that burden. Is there any case where that ALJ would not have to provide an explanation? Let's say, for example, your client was not 49 and five months and 17 days, I think it was, but instead was 45 years old and no other indication in the basis for bumping her up. Does the ALJ have to say something about that? We don't believe so. We think that that would fall clearly with outside the one-year limit that my co-counsel is discussing about what the phrase within a few days to a few months means in the context of 60-month age categories. We also don't think there'd be a duty to explain borderline age scenarios when there's a finding that application of the next age category wouldn't make a difference. The problem here is pointing this court's attention to appendix page 22. The ALJ expressly disclaimed to make that finding erroneously stating that application of the next age category wouldn't be material to ARDS disability determination, when in fact, if her skills were considered transferable, they would be. Let me interrupt you just a sec. My understanding of the administration's position is that the ALJ, faced with a claimant who is more than six months out, can still treat them as borderline if he feels it's appropriate. So, if I'm correct in that, so even if the six-month remains not as a, it's not, it's obviously, if that's true, it's obviously not a hard and fast rule. We don't know where there would be a hard and fast rule. So, what I'm saying is, even if we didn't accept your one-year proposition that said it's six months, it's still not a hard and fast rule. So, I mean, it seems to me that you're in good shape in your argument to say that there's a responsibility on the ALJ to explain his decision where he has the authority to treat them as borderline if he wants to. Right. We think that's exactly right. If he thinks it's appropriate. Yeah. I mean, what I think the agency seems to want is some sort of one-way ratchet where, although ALJs have discretion to find someone as borderline age, they, for whatever reason, lose their obligation to explain. Where is the obligation to explain? What's the authority that requires the administration to explain? I think that may be one of the central issues. Yeah. What do we look to that says they must do that? Except several sources. So, Title 42 of the United States Code 405B1, which requires that agency's decision be supported by substantial evidence. There's also a duty that the ALJs, both in the Social Security Act, explain their decisions. I believe that's 405G of the same title. 405G requires? 405G, I believe, is the substantial evidence provision, and 405B1 is the requirement that the CFR, requiring that ALJs explain their decisions. The agency's also gone forward in its policy manuals and emphasized that even when ALJs are making favorable decisions, they really have to explain the borderline age issue. So, those sound like they're, you say the regulations and the administration's internal documents obligate it to, you haven't cited me to a case, and that may not be necessary. I just want to make sure I understand the sources of that obligation. Yeah, absolutely. So, four circuits have ruled specifically on this issue. We think the Fifth Circuit most recently in Schofield v. Saul gets, I think, has the best articulation of this. They emphasize both the substantial evidence point as well as Title 20 of the CFR 404 and 953. Let me just ask one more quick question. In your view, is the fact that no objection was made or this issue was not raised before the ALJ, is that a factor we can consider in evaluating this situation? I don't think so. The district court opinion below read ARDS Pro Se complaint challenging the ALJ's order to fairly encompass the borderline age issue, so I'd refer you to the district court's opinion. Well, I think the question is whether, not necessarily before the district court, but before the ALJ. If the issue wasn't fairly presented to the ALJ, is that a factor that we should consider? I don't think so because, as opposing counsel noted, ALJs in this position are more of an inquisitorial role where they're supposed to be in the driver's seat making these findings and carrying their burden to prove that ARD is not disabled within the meaning of the regulation. Does it matter whether or not the claimant has counsel? I know in a lot of these cases they may not, and so that may make a difference. But if they have a lawyer, why shouldn't we hold that lawyer to some burden? I take your point. I don't know if the burden or not changed. I know that the burden does not shift at Stage 5 whether or not the claimant is represented or not, so that'd be my answer. All right. Thank you very much. Thank you very much. You know, when we set up this calendar here at the law school, we had no idea because we set these cases randomly that one of the parties would be represented by student counsel. I think that probably is a welcome surprise, maybe not for them, but for the students behind them. And I will say, Mr. Ballenger, that your students acquitted themselves quite well, and more importantly, we appreciate the fact that the law school is willing to take on this assignment. We rely quite heavily on lawyers and law students who are willing to take on cases for clients who cannot pay for a lawyer. And certainly, Ms. Ard was very ably represented here this morning, so I want to thank both young counsel for their arguments, as was the government. Mr. Summers, you did a fine job. We'll come down and greet counsel and move on to our second case. Thank you.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., William B. Traxler Jr.